**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN KOTOK,<br><br>               Plaintiff,<br><br>v.<br><br>A360 MEDIA, LLC, BAUER MEDIA GROUP USA, LLC,<br><br>               Defendants. | Civil Action No. 22-4159 (SDW) (JRA)<br><br>**OPINION**<br><br>February 9, 2023 |

**WIGENTON**, District Judge.

Before this Court is Defendants A360 Media and Bauer Media Group USA, LLC's (collectively, "Defendants") Motion to Dismiss (D.E. 7) Plaintiff Steven Kotok's ("Plaintiff") First Amended Complaint (D.E. 5-1 ("Am. Compl.")) for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1332. Venue is proper under 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff was employed by Defendant Bauer Media Group USA, LLC ("Bauer") as its CEO and President beginning in October 2016, pursuant to an employment agreement ("the

---

[1] For purposes of the present Motion, the facts are drawn from the Amended Complaint and accepted as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

"Agreement") executed on August 4, 2016. (Am. Compl. ¶ 3; D.E. 1-5.)[2] In February 2022, Defendant A360 Media, LLC ("A360") acquired Bauer and thus assumed Bauer's duties and obligations toward Plaintiff as the employing "Company" under the Agreement. (Am. Compl. ¶ 4, 18; Agreement ¶ 12.)

### A.   The Agreement

The Agreement provided that Plaintiff's employment could be terminated by the Company, with or without cause, or by Plaintiff, for "good reason" or otherwise. (Agreement ¶ 6.) Termination would be effective once either party gave the other written notice of termination. (*Id.*) One "good reason" for Plaintiff to terminate his employment was the Company's "material breach of [its] obligations" under the Agreement. (*Id.* ¶ 6(e).) However, there would not be "good reason" for Plaintiff to terminate his employment if the Company corrected its breach within 30 days following Plaintiff's notification of the good reason. (*Id.*)

Section 7(d) of the Agreement provided that Plaintiff would receive the following severance benefits if his employment was terminated either "without cause" or for "good reason": (1) a sum equal to six times his monthly base salary rate, paid monthly for six months following his termination; (2) his annual bonus for the year his termination occurred, paid monthly for six months following his termination; and (3) six months' worth of continued health benefits following his termination. (Agreement ¶¶ 6(d), 7(d)(ii)–(iii).) Provision of all three types of severance benefits was conditioned upon Plaintiff delivering a general release form to the Company within 60 days of his termination, among other conditions. (*Id.* ¶¶ 7(d)(ii)–(iii), 8.) Per Section 8 of the

---

[2] Although Plaintiff did not attach the Agreement to his Amended Complaint, this Court may consider it in deciding a motion to dismiss because it is "explicitly relied upon in the complaint" and Plaintiff's claims are "based on" the Agreement. *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016) (emphasis omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). (*See* Am. Compl. ¶¶ 29–33, 36.)

Agreement, the general release form was to be "substantially in the form of" a general release form attached to the Agreement as Exhibit A (the "Sample General Release"). (*Id.* ¶ 8.)

### B.    Plaintiff's Termination

Shortly after A360 acquired Bauer, A360's President informed Plaintiff that his employment would be terminated without cause effective March 31, 2022. (Am. Compl. ¶ 19.) In late March 2022, A360 gave Plaintiff a proposed Separation Agreement that did not include the same severance benefits agreed to in Section 7(d) of the Agreement. (*Id.* ¶ 20–21.) Plaintiff, finding this to be a material breach of the Agreement, notified A360 in writing that he was terminating his employment for "good reason." (*Id.* ¶ 20–21.) Plaintiff's last day of employment was March 31, 2022. (*Id.* ¶ 23.)

On April 1, Plaintiff gave A360 a general release substantially in the form of the Sample General Release attached to the Agreement. (*Id.* ¶ 24.) Later the same day, without acknowledging receipt of that release, A360 gave him a general release that was materially different from the Sample General Release. (*Id.* ¶¶ 25–26.) Defendants have not paid or provided Plaintiff the severance benefits agreed to in Section 7(d) of the Agreement, other than two months of continued health benefits. (*Id.* ¶ 27.)

### C.    Procedural History

Plaintiff filed the instant lawsuit on May 18, 2022, in the Superior Court of New Jersey, Law Division, Bergen County. (D.E. 1-1.) On June 7, 2022, Plaintiff filed an Amended Complaint, asserting state law claims for breach of contract (Count One) and a violation of the New Jersey Wage Act (Count Two). (D.E. 5-1 ("Am. Compl.") ¶¶ 28–38.) Defendants were served with a copy of the Amended Complaint on June 8, 2022, and they timely removed the suit to this Court on June 20, 2022, based on both federal question jurisdiction and diversity

jurisdiction.  (D.E. 5-1, 5-2, 5-3.)  *See* 28 U.S.C. §§ 1331, 1332, 1441, 1446(b).  Defendants subsequently filed the instant motion to dismiss, and the parties have completed briefing.  (D.E. 7, 12, 13.)

## II.     **LEGAL STANDARD**

An adequate complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim for relief must be "plausible" and a complaint will not survive a motion to dismiss if the "well-pleaded facts do not permit the court to infer more than the mere possibility" of defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  "Preemption is an affirmative defense that the defendant has the burden to prove," so a defendant moving to dismiss under Rule 12(b)(6) based on preemption must show that federal preemption is "apparent on the face of the complaint and documents relied on in the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quotation marks omitted); *see, e.g. MedWell, LLC v. Cigna Corp.*, 2021 WL 2010582, at *6 (D.N.J. May 19, 2021) (addressing ERISA preemption on a Rule 12(b)(6) motion).

### III.  DISCUSSION

Plaintiff asserts that Defendants' failure to pay him the severance benefits provided for in Section 7(d) of the Agreement was a breach of contract (Count One) and a violation of the New Jersey Wage Collection Law, N.J. Stat. Ann. §§ 34:11-57–67 (Count Two).  (Am. Compl. ¶¶ 31–33, 35–38.)  Defendants move to dismiss both claims as preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  (D.E. 7-1 at 7–15.)  In the alternative, Defendants argue that Plaintiff fails to state a claim under the New Jersey Wage Collection Law because that statute does not provide a private right of action, and because his severance benefits are not "wages" as defined in that statute and related wage statutes.  (*Id*. at 13–15.)

#### A.  ERISA Preemption

Preemption is "fundamentally a question of congressional intent."  *English v. General Electric Co.*, 496 U.S. 72, 78–79 (1990).  Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries," by establishing, inter alia, "standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for . . . ready access to the Federal courts."  29 U.S.C. § 1001(b).  ERISA was intended to "provide a uniform regulatory regime over employee benefit plans" and to ensure that the regulation of such plans "would be exclusively a federal concern."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quotation marks omitted).

To that end, ERISA established federal causes of action in 29 U.S.C. § 1132(a) that preempt conflicting state laws, and it also contains a broad preemption provision in 29 U.S.C. § 1144(a) stating that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a); *Aetna Health Inc.*, 542 U.S. at 208–09; *see*

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020). Here, Plaintiff's state law claims are preempted by both 29 U.S.C. §§ 1132(a) and 1144(a) because the disputed provisions of the Agreement constitute an ERISA "employee benefit plan," Plaintiff's claims "relate to" this plan, and at least one of his claims could have been brought under § 1132(a)(1)(B).

      **1. The ERISA Plan**

An "employee benefit plan" is broadly defined to include "any plan, fund, or program" established by an employer that provides an employee or his beneficiaries with a number of types of benefits including "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits." 29 U.S.C. § 1002(1)(B), (3). A plan that provides severance benefits is included in this definition. *See* 29 U.S.C. §§ 186(c), 1002(1)(B); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 & n.5 (1987) (finding that "severance benefits are included in ERISA"). Even informal written or oral communications constitute an ERISA plan if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012) (quotation marks omitted).

Plaintiff's claims turn on Defendants' failure to provide severance benefits outlined in Section 7(d) of the Agreement. (Am. Compl. ¶ 31–33, 35–38.) The Agreement states that the employing "Company," A360, agreed to pay Plaintiff, as the intended beneficiary "Employee," specified benefits upon his termination, and outlined the timeline and procedures for providing those benefits. (Agreement p.1, ¶ 7(d).) Thus, it falls within the broad definition of an ERISA employee benefit plan. *See Shaver*, 670 F.3d at 475.

The Court is aware that the provision of severance benefits does not implicate ERISA when it requires the employer to "do little more than write a check" and requires "no administrative scheme whatsoever to meet the employer's obligation," but that is not the situation here. *Fort Halifax Packing Co.*, 482 U.S. at 12; *cf. Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538 (3d Cir. 1992). The severance benefits at issue here are provided by the employer, A360, pursuant to an Agreement that requires A360 to "analyze [Plaintiff's] particular circumstances in light of the [Agreement's] criteria" in order to determine his eligibility for those benefits, so it is an employee benefit plan. *Menkes*, 762 F.3d at 290–91; *see Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir. 1989) (distinguishing *Fort Halifax Packing Co.* and holding that an agreement providing corporate executives with severance benefits is an employee benefit plan); *Zgrablich v. Cardone Indus., Inc.*, 2016 WL 427360, at *5 (E.D. Pa. Feb. 3, 2016) (same).

Here, as in *Pane* and *Zgrablich*, the payment of severance benefits was not triggered automatically—the plan required A360 to determine whether Plaintiff is entitled to them by assessing the circumstances of his termination and whether he meets all of the criteria for eligibility detailed in the plan. *See Pane v. RCA Corp.*, 667 F. Supp. 168, 170–71 (D.N.J. 1987), *aff'd*, 868 F.2d 631 (3d Cir. 1989); *Zgrablich*, 2016 WL 427360, at *5. Among other things, that determination required analyzing the reason for Plaintiff's termination; whether he complied with Sections 8, 9, and 10 of the Agreement; whether he timely elected to continue, and paid his part for, his health benefits; whether he obtained other employment after termination; and whether provision of the health benefits would expose A360 to excise taxes. (Agreement ¶ 7(d).) For all of these reasons, the Agreement is an ERISA employee benefit plan.

### 2. Express Preemption Under 29 U.S.C. § 1144(a)

Both of Plaintiff's claims are expressly preempted by 29 U.S.C. § 1144(a) because both "relate to [an] employee benefit plan." 29 U.S.C. § 1144(a). A state law "relate[s] to" an employee benefit plan within the meaning of § 1144(a) "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). Section 1144(a) has been interpreted broadly, to preempt not only state statutes and regulations but "also common law causes of action." *Plastic Surgery Ctr., P.A.*, 967 F.3d at 226; see *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (stating that this provision "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.")

Plaintiff alleges that A360 breached the Agreement and improperly denied him benefits owed under Section 7(d) of the Agreement, and both of his claims seek payment of those benefits. (Am. Compl. ¶¶ 31–33. 36–38.) State law claims alleging the "denial of benefits or improper processing of benefits" under an ERISA plan are expressly preempted. *Menkes v. Prudential Ins. Co. of Am.,* 762 F.3d 285, 296 (3d Cir. 2014). Here, as in *Menkes*, Plaintiff's claims "explicitly require reference to the plan and what it covers," so they are expressly preempted by § 1144(a). *Menkes*, 762 F.3d at 296 (finding breach-of-contract claim preempted); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 48 (1987) (finding breach-of-contract claim alleging failure to provide benefits under an employee benefit plan "undoubtedly [met] the criteria" for § 1144(a) preemption).

### 3. Conflict Preemption Under 29 U.S.C. § 1132(a)

Plaintiff's breach-of-contract claim in Count One is also preempted by 29 U.S.C. § 1132(a)(1)(B) under principles of conflict preemption. Among other causes of action provided

8

for under ERISA, this section enables a plan participant to bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  If a plan beneficiary, "at some point in time, could have brought his claim under [§ 1132](a)(1)(B)," then his state law claim "is completely pre-empted" by this statute, absent some other "independent legal duty that is implicated by a defendant's actions." *Aetna Health Inc.*, 542 U.S. at 210.

Here, Plaintiff is a beneficiary of an ERISA plan and, in Count One, he seeks nothing more than to recover benefits allegedly owed to him under the terms of that plan, so this claim is preempted by 29 U.S.C. § 1132(a)(1)(B). *Aetna Health Inc.*, 542 U.S. at 210; *cf. Pilot Life Ins. Co.*, 481 U.S. at (finding breach-of-contract claims preempted given Congress's clear "intention that all suits brought by beneficiaries . . . asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by [§ 1132](a)").  Plaintiff argues that this claim is not subject to § 1132 preemption because his claim for severance benefits arises from an "independent legal duty," but he has not identified any other source of a legal duty—except the plan's terms—that required A360 to provide him with severance benefits, such as a state law or another employment contract obligating A360 to pay him severance benefits upon his termination. (D.E. 12 at 12.)[3]  It is less clear whether Plaintiff's claim under the New Jersey Wage Collection

---

[3] Plaintiff in fact agreed that any severance benefits owed to him under Section 7(d) would be "in lieu of any termination or severance payments or benefits" for which he might be eligible under any of A360's other "plans, policies, or programs" or under certain state laws or regulations. (Agreement ¶ 7(d).)  Plaintiff relies on *Caivano* to argue that his claim stems from an independent legal duty, but that case is distinguishable. *Caivano v. Prod. Workers Union Loc. 148*, 2014 WL 2931183 (D.N.J. June 30, 2014).  One of the claims asserted by the plaintiff in that case, who was a member of a labor union, was for severance benefits owed to him under a union-wide policy that automatically provided for a set amount of severance benefits upon retirement. *Id.* at *2.  The Court thus found that the defendants had not met their burden to show ERISA preemption given that a "one-time severance benefit" owed under a separate contract would not implicate ERISA. *Id.* at *7.

9

Law is preempted by § 1132(a)(1)(B), but given that it is clearly preempted by § 1144(a), this Court does not address this alternative basis for preemption.

### B.  New Jersey Wage Collection Law

The parties dispute whether Plaintiff alleges a viable state law claim under the New Jersey Wage Collection Law, N.J. Stat. Ann. §§ 34:11-57–67.  (D.E. 7-1 at 13–15; D.E. 12 at 13–16.)  However, this claim is preempted by federal law, as discussed above, so whether it would otherwise survive dismissal is a moot issue.  Even assuming the Wage Collection Law does create a private right of action for Plaintiff to recover the severance benefits he seeks, his attempt to do so under state law is preempted by ERISA.  *See* 29 U.S.C. § 1144(a); *Plastic Surgery Ctr., P.A.*, 967 F.3d at 226 (stating that § 1144(a) was intended "to make clear that ERISA's mandates supplanted the patchwork of state law previously in place and to ensure that plans were not crippled by the administrative cost of complying with not only ERISA, but also innumerable, potentially conflicting state laws").

In sum, Defendants have shown that it is "apparent on the face of the complaint," and the Agreement relied on in the complaint, that both of Plaintiff's claims relate to an ERISA employee benefit plan and are thus preempted, so dismissal under Rule 12(b)(6) is warranted.  *Lupian*, 905 F.3d at 130; *see Menkes,* 762 F.3d at 296.  Plaintiff shall be permitted to amend his complaint to allege his claims under ERISA.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's First Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff shall have thirty (30) days to file a Second Amended Complaint.  An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
      José R. Almonte, U.S.M.J.