**UNSEALED**

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN KOTOK, *Plaintiff*, v. A360 MEDIA, LLC and BAUER MEDIA GROUP USA, LLC, *Defendants*. | Civil Action No. 22-4159 **OPINION** September 23, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendants A360 Media, LLC and Bauer Media Group USA, LLC's (together "Defendants") motion for summary judgment and the cross-motion for summary judgment filed by Plaintiff Steven Kotok. (ECF 85, "Def. Br."; ECF 87, "Pl. Br.") The Court reviewed all submissions made in support of and in opposition to the motions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**, and Plaintiff's cross-motion for summary judgment is **DENIED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

---

[1] The facts and procedural history are drawn from Plaintiff's brief in support of his motion for summary judgment (ECF 87-1), Defendants' brief in support of its motion for summary judgment (ECF 85-1), both parties' respective opposition papers (ECF 89, "Def. Opp."; ECF 95, "Pl. Opp."), and the parties' submissions regarding undisputed material facts (ECF 87-2, "PSMF"; ECF 85-2, "DSMF"). The Court incorporates the factual and procedural history from the Hon. Susan D. Wigenton's February 9, 2023 Opinion herein. (*See* ECF 14.)

Plaintiff Steven Kotok served as Chief Executive Officer ("CEO") and President of Bauer Media Group USA, LLC ("Bauer") from October 2016 through March 31, 2022, when Bauer was acquired by A360 Media, LLC ("A360 Media"). (DSMF ¶¶ 39, 40.) Plaintiff signed an Employment Agreement (the "Contract") with Bauer on August 4, 2016 before assuming the role of CEO and President. (*Id.* ¶ 1.) One term of that agreement, Section 7(d), is the subject of this litigation. Section 7(d) details Plaintiff's severance benefits in the event of termination without cause or for good reason. (*See* ECF 87-5, Employment Agreement, "Pl. Ex. 1".) Section 7(d) provides that Plaintiff shall receive "an amount equal to the sum of (x) the Employee's monthly Base Salary rate" in addition to "(y) the Annual Bonus for the year in which the termination occurs at the target bonus amount[.]" (*Id.* § 7(d)(ii).) Section 7(d) further provides that these amounts are to be "paid monthly for a period of . . . 6 months following such termination[.]" (*Id.*) The Contract also conditions severance upon "a general release of claims in favor of the Company substantially in the form of Exhibit A attached hereto."[2] (*Id.* § 8.)

Before Plaintiff was hired as CEO, Plaintiff negotiated and finalized his Contract over email with Felix von Selle, the Human Resources ("HR") Director for Bauer's parent company. (*See* ECF 86-6, "Def. Ex. 12"; ECF 86-7, "Def. Ex. 13"; ECF 86-8, "Def. Ex. 14".) Those emails reveal that Bauer initially offered Plaintiff severance of six months of base salary to be paid over six months. (Def. Ex. 12 at 8-9.) Plaintiff countered with an offer of "12 months of total

---

[2] Section 8 reads as follows:

**RELEASE; MITIGATION; SET-OFFS**. Any and all amounts payable and benefits or additional rights provided pursuant to this Agreement in connection with the Employee's termination of employment beyond the Accrued Benefits (other than the benefit described in Section 7(a)(ii) hereof) shall only be payable if the Employee delivers to the Company and does not revoke a general release of claims in favor of the Company substantially in the form of Exhibit A attached hereto. Such release shall be executed and delivered (and no longer subject to revocation, if applicable) within sixty (60) days following termination. (Pl. Ex. 1 § 8.)

2

compensation (including bonus.)" (Def. Ex. 13 at 2.) Defendants responded with a compromise: twelve months if Plaintiff's employment was terminated within one year, and six months if his employment was terminated after September 30, 2017.[3] (Def. Ex. 14 at 3.) Defendants agreed to include Plaintiff's term that added his annual bonus to his severance. (*Id.*) Plaintiff accepted their counteroffer, and his revisions were incorporated into the finalized Contract, which was signed by the parties on August 4, 2016. (DSMF ¶ 12.) Mr. von Selle avows that Bauer did not offer more than one year of compensation as severance to any employee. (*Id.* ¶ 14.) Mr. von Selle further avers that at no time did Bauer understand Plaintiff to be requesting severance in the amount of six or twelve years of bonus payments, and that "Bauer would not have hired Plaintiff if he had required severance of 6 or 12 years' worth of bonus." (*Id.* ¶ 16.) Plaintiff alleges that he turned down an offer of employment from the New York Times Company to accept the offer to become CEO and President of Bauer. (PSMF ¶ 12.)

During negotiations over the acquisition, A360 Media asked Bauer to provide the severance obligations it would owe executives if the company terminated their employment following the acquisition. (DSMF ¶ 22.) On December 21, 2021, Bauer's Chief Financial Officer Bill Houston sent Plaintiff an email with a chart of executive severance liability a, listing Plaintiff's severance as $275,000 (representing a "commitment" of "6 months") and a total severance liability for all four executives of $720,000. (ECF 85-8, "Def. Ex. 29".) Plaintiff responded to Mr. Houston's email "Fantastic," and asked follow-up questions, including "do you have my employment agreement?" (*Id.*) Plaintiff did not state that there was anything materially incorrect

---

[3] Mr. von Selle responded on August 2, 2016 to Plaintiff's counteroffer with the following over email: "Our worldwide standard and maximum at the same time even for Senior Management is 6 months. But in order to find an agreement soon we would give you the security of 12 months for the first year of the employment and afterwards move to 6 months. This is a big exception to our usual agreements what 1 would like to underline again." (Def. Ex. 14 at 3.)

in the chart. The next day, Mr. Houston sent A360 Media's HR representative the same severance liability chart listing Plaintiff's liability as $275,000 and copied Plaintiff on that email. (*See* ECF 85-9, "Def. Ex. 30".)

On January 18, 2022, after the parties signed the acquisition deal but before it closed, Plaintiff emailed Mr. Houston, writing "I believe" that the "severance commitment for me . . . was not listed correctly in the disclosures" and that he planned on "straightening [it] out" that day. (ECF 85-10, ¶ "Def. Ex. 37".) An hour later, Plaintiff sent A360 Media a revised severance chart via email. (ECF 85-11, "Def. Ex. 38".) In this version of the chart, Plaintiff's severance was listed as "TBD," and the total amount of severance for all executives was listed as "$682,500." (*Id.* at 4.) Plaintiff never discussed with Defendants the $1,775,000 amount he now claims he is owed before the transaction closed.[4] (DSMF ¶ 38.)

A360 Media officially acquired Bauer in March 2022, and Plaintiff's last day of employment with Defendant was March 31, 2022. (*See* PSMF ¶ 1.) Both parties agree that Plaintiff's employment was terminated without cause. (*Id.* ¶ 1; DSMF ¶ 40.) The next day, on April 1, 2022, Plaintiff's attorney sent Defendant A360 Media a letter informing Defendant of Plaintiff's expectation to be paid "$295,833.33 per month ($45,833.33 for the monthly Base Salary rate and $250,000 for the Annual Bonus for the year at the target bonus amount) for six months and continue his family's participation in the Company's group health plan at the Company's expense." (*See* ECF 86-11, "Def. Ex. 43".) Plaintiff's attorney also attached the general release that Defendant provided Plaintiff with his original Contract; however, Plaintiff added one clause

---

[4] When the transaction closed, Plaintiff was paid a transaction bonus of $137,500. (DSMF ¶ 39.)

to Paragraph 12 which stated that Plaintiff did not release his claims under Section 7(d) of the Contract.[5]  (Pl. Br. at 28; *see* Def. Ex. 43.)

Plaintiff alleges that Defendants have not paid him "any severance" and asks this Court to award him $1,775,000.  (PSMF ¶ 40; Pl. Br. at 3.)  This figure represents six months of his $550,000 base salary (which amounts to $275,000), in addition to six times his annual bonus (Plaintiff's annual bonus in 2022 was $250,000, amounting to $1,500,000 in bonus payments).  (Pl. Br. at 3.)  Defendants interpret the language of Section 7(d) differently; they maintain that the Agreement provides for six months of total compensation (base salary and bonus), resulting in a severance payment of $400,000.  (Def. Br. at 13; *see* DSMF ¶ 41.)  The Contract also required Defendants to provide Plaintiff with health care coverage for six months following his termination.[6]  (Pl. Ex. 1 § 7(d)(iii).)  Plaintiff alleges that Defendants only paid for two months of health care coverage, and that Defendants' unpaid share of the premiums for Plaintiff's participation in Bauer's group health plan is $5,849.31, which he is still owed.  (PSMF ¶¶ 41, 43.)

Plaintiff commenced this lawsuit on May 18, 2022 by filing a complaint in the Superior Court of New Jersey, Bergen County alleging breach of contract and a violation of the New Jersey Wage Act, N.J. Stat. Ann. §§ 34:11-57-67.  (ECF 1, Notice of Removal, ¶¶ 1, 8.)  Defendants removed the action to federal court on June 20, 2022.  (*See generally id.*)  On February 9, 2023,

---

[5] The only difference between the release Plaintiff signed and the release originally provided by Bauer is the addition of the language "except that, I am aware that I have claims under Section 7(d) of the [Employment] Agreement which are not released by this General Release."  (Pl. Br. at 28; *see* Def. Ex. 43 at 8 ¶ 12.)

[6] Section 7(d)(iii) states that the Company "shall pay or provide Plaintiff with . . . continued participation in the Company's group health plan (to the extent permitted under applicable law and the terms of such plan) which covers the Employee (and the Employee's eligible dependents) for a period of (a) 12 months following such termination, provided the termination becomes effective by 30 September 2017, or (b) 6 months following such termination, provided the termination becomes effective after 30 September 2017, at the Company's expense."

5

the Honorable Susan D. Wigenton granted Defendants' motion to dismiss Plaintiff's complaint, finding that Plaintiff's state law claims were preempted by the Employee Retirement Income Security Act ("ERISA"). (*See* ECF 14, "Op." or "Opinion" at 10.) Plaintiff then filed an amended complaint in accordance with Judge Wigenton's Opinion, asserting a sole cause of action under ERISA, 29 U.S.C. § 1132(a)(1)(B)[7]. (*See* ECF 16, Second Amended Complaint, "SAC" ¶¶ 28-33.) This Court granted Defendants' leave to file an Amended Answer and Counterclaim (ECF 39), and in Defendants' Answer to the SAC they plead fifteen affirmative defenses and one counterclaim for Reformation under ERISA, 29 U.S.C. § 1132(a)(3). (ECF 40, "Answer" ¶¶ 4-8.) Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.[8] (*See* Def. Br.) Plaintiff filed a cross-motion for summary judgment pursuant to Rule 56.[9] (*See* Pl. Br.) Both motions for summary judgment are now before this Court.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)).

---

[7] The ERISA statute provides that a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

[8] Plaintiff filed an opposition (Pl. Opp.), and Defendants filed a reply (ECF 92, "Def. Reply").

[9] Defendants opposed (Def. Opp.), and Plaintiff filed a reply (ECF 91, "Pl. Reply").

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

When, as here, the parties file dueling motions for summary judgment, the governing standard "does not change." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 401 (3d Cir. 2016) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). The Court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Phila. Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). "That one of the cross-motions is denied does not imply that the other must be granted." *Indus. Corner Corp. v. Pub. Serv. Mut. Ins. Co.*, No. 20-06677, 2023 U.S. Dist. LEXIS 22017, at *14 (D.N.J. Feb. 8, 2023). For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

### III.   ANALYSIS

Both parties seek entry of summary judgment on Plaintiff's ERISA claim in accordance with their interpretations of Section 7(d). Defendants argue that the Contract is unambiguous on its face, but even if this Court finds the language of Section 7(d) to be ambiguous, the extrinsic evidence supports Defendants' interpretation of Plaintiff's severance package. (*See* Def. Br. 10-12.) Plaintiff also argues that the plain language of 7(d) is unambiguous, but he instead maintains that the contractual language "require[s] Defendants to pay Kotok his annual bonus, paid monthly for six months." (Pl. Br. at 8.) Plaintiff asserts that Defendants should not be permitted to introduce extrinsic evidence to support their construction of Section 7(d). (*Id.* at 11-12.) Finally, Defendants argue that Plaintiff should be barred from recovering any severance pursuant to the unclean hands doctrine, and because Plaintiff failed to return the general release in substantially

the same form, which was a condition precedent for Plaintiff to receive severance according to the Contract. (Def. Br. at 15-16.)

### A. ERISA Claim

The Court must interpret the terms of the Contract here because "[c]ontract interpretation is usually a question of law in New Jersey."[10] *SmithKline Beecham Corp. v. Rohm and Haas Co.*, 89 F.3d 154, 159 (3d Cir. 1996) (citing *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 767 F.2d 43, 47 (3d Cir.1985)). Plaintiff's one cause of action seeks to recover benefits allegedly owed to him under the terms of his ERISA plan.[11] (*See* SAC ¶ 28.) "Claims for benefits based on the terms of an ERISA plan are contractual in nature and are governed by federal common law contract principles." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011). Thus, "where claims put at issue the meaning of plan terms," the courts "apply the federal common law of contract to interpret those terms." *Id.*

Of course, "the paramount goal of contract interpretation is to determine the intent of the parties." *Norfolk Southern Ry. Co. v. Pittsburgh & W.Va. R. R.*, 870 F.3d 244, 253 (3d Cir. 2017). In determining intent, it is "not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior" that matters. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009). "The strongest objective manifestation of intent is the language of the contract" and "the words of the contract clearly manifest the parties' intent if they are capable of only one objectively reasonable interpretation." *Baldwin*, 636 F.3d at 76.

---

[10] The Contract is governed by the laws of the State of New Jersey. (*See* Pl. Ex. 1 § 17.)

[11] Judge Wigenton ruled that Plaintiff's employment benefit agreement (the Contract) is an ERISA plan and this Court adopts her ruling. (*See* Op. at 7) ("the Agreement is an ERISA employee benefit plan.")

If, however, the words of the contract are capable of more than one objectively reasonable interpretation, the words are ambiguous. *Id.*; *see also Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 63 (3d Cir. 2019) (holding contract language to be ambiguous if "capable of only one objectively reasonable interpretation."). To determine whether there is ambiguity, "the strongest evidence" is "the words of the agreement," but the Court may consider "additional sources if necessary to determine if the words of the contract were given their common meaning," including "the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Televantos v. Lyondell Chem. Worldwide*, 31 F. App'x 63, 67 (3d Cir. 2002) (cleaned up). "Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." *Id.* (cleaned up).

The language of Section 7(d) is not well-constructed and susceptible to more than one reasonable interpretation. In his counter to Bauer's initial offer, Plaintiff proposed severance of "12 months of total compensation (including bonus)." (Def. Ex. 13 at 2.) Plaintiff attached a redline of the draft Contract with his edits, which inserted this new bonus term to Section 7(d)(ii): "an amount equal to the sum of (x) the Employee's monthly Base Salary rate (but not as an employee),) plus (y) the Annual Bonus for the year in which the termination occurs at the target bonus amount, paid monthly for a period of 6 12 months following such termination[.]"[12] (Def. Ex. 13 at 8.) Plaintiff's characterization of his severance proposal to Bauer is wholly distinct from the severance formula that he drafted and inserted into the Contract's text.[13] Plaintiff now

---

[12] Defendant Bauer ultimately adopted Plaintiff's language as it appears in his counteroffer and incorporated it into the final Contract. (*See* Pl. Ex. 1.)

[13] Defendant Bauer originally proposed severance of six months of salary, and the contractual language of their initial offer read: "an amount equal to the sum of the Employee's monthly Base Salary rate (but not as an employee), paid monthly for a period of 6 months following such

interprets Section 7(d) according to that formula, whereas Defendants interpret Section 7(d) as providing either twelve or six months of salary and bonus (depending on when Plaintiff's employment was terminated), in accordance with the parties' negotiations. Both Plaintiff's and Defendants' instant interpretations are plausible from the face of the Contract and the negotiation history of the parties. Therefore, the clause is ambiguous. *See Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991) ("A term is ambiguous if it is subject to reasonable alternative interpretations.").

### B. Extrinsic Evidence

When an ERISA plan is ambiguous, ascertaining its meaning requires examining many factors. *Id*. The ultimate determination for interpreting an ambiguous provision is to ascertain the "intent" of the parties. *See id.* (holding that "the reasonable understanding of the beneficiaries, as well as the intent of the employer, may be admissible to clarify ambiguities," which may be evidenced by "interpretive statements made by [the employer], past practices, customary usage in the trade, and other competent evidence bearing on the understanding of the parties"); *see also Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 145 (3d Cir. 1987), *aff'd in part, rev'd in part on other grounds*, 489 U.S. 101 (1989) ("[I]ndustry practice with respect to severance pay plans would shed light on this plan's meaning, as would past practice under the plan itself."). The Court therefore must look to extrinsic evidence to assess the understanding and intent of the parties.

Defendants point to the "the negotiation history and conduct of the parties" as evidence of their intent to provide Plaintiff with six months of base salary and his annual bonus as severance. (Def. Br. at 10.) Bauer's initial offer to Plaintiff was severance of six months of salary with no

---

termination;" (Def. Ex. 12 at 8-9). The Contract did not contain the formula that Plaintiff eventually added to Section 7(d)(ii).

bonus. (Def. Ex. 12 at 8-9) ("an amount equal to the sum of the Employee's monthly Base Salary rate (but not as an employee), paid monthly for a period of 6 months following such termination").

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████████████████████[14] (DSMF ¶ 8.)

The Court agrees with Defendants that there "can be no question" that Plaintiff's counteroffer to Bauer's first offer of six months of salary was one year of salary and Plaintiff's annual bonus. (Def. Br. at 11.)

It is clear that the parties did not intend to agree to twelve months of salary and twelve years of bonus, as evidenced by Plaintiff's own suggestions of "12 months of total compensation (including bonus)[.]" (Def. Ex. 13 at 2). The Court agrees with Defendants that it "would be absurd" to interpret this provision as Bauer intending to give Plaintiff a severance package that jumped from $275,000 (6 months of salary) to $3,550,000 (12 months of salary and twelve times annual bonus) without any explicit reference to or discussion of that figure. (Def. Br. at 11.) Mr. von Selle, Bauer's HR Director at the time, attests that "Bauer would not have hired Plaintiff if he had required severance of 6 or 12 years' worth of bonus." (DSMF ¶ 16.) If Plaintiff had intended to negotiate twelve times his bonus in addition to twelve months of salary, he would have used language to indicate as much.

Furthermore, the severance amounts exchanged between Bauer and A360 Media during the acquisition negotiations only ever referred to Plaintiff's severance liability as six months—not six years—and certainly never referenced a million-dollar severance package. Plaintiff himself

---

[14] The specific terms of Plaintiff's contract with The Week are filed under seal. (*See* DSMF ¶ 9.)

sent A360 Media a chart before the acquisition listing the total severance for *all four executives* as $682,500, which is less than half of the amount that Plaintiff currently seeks in severance now *just for himself*. (*See id.* ¶ 35.) In that same chart, Plaintiff listed his severance liability as "TBD"; *not* a million-dollar amount. If Plaintiff understood his severance to be the amount he now seeks, why did not list $1,775,000 on the chart that he edited and sent to Defendant A360 Media? Thus, it was certainly not the "understanding of the parties" that Plaintiff receive twelve or six years of bonus, $3 million and $1 million respectively, in addition to his monthly salary, as severance when they negotiated the Contract or discussed severance liability during the takeover negotiations. *Taylor*, 933 F.2d at 1232.

The Court is further persuaded by the evidence Defendants present of "past practices" and "customary usage in the trade[.]" *Id*. Defendant Bauer never offered more than one year of compensation as severance to any other executive or employee. (Def. Br. at 12.) ███████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████ (DSMF ¶ 45.)

The Court therefore finds it was the parties' intent to agree to twelve or six months of salary and bonus. There is no genuine dispute of a material fact here because the evidence is not "such that a reasonable jury could return a verdict" for Plaintiff. *Anderson*, 477 U.S. at 248. The evidence of the parties' mutual understanding while negotiating (1) the Contract itself and (2) the

13

acquisition of Bauer overwhelmingly favors Defendants' interpretation of the clause. The Court cannot credit Plaintiff's subjective belief that he is owed six years of bonus payments. *See Lujan*, 497 U.S. at 888. Plaintiff is entitled to $400,000 in severance from Defendants, representing six months of his salary and annual bonus.[15]

Under Section 7(d)(iii), Defendants were required to provide Plaintiff with six months of continued health benefits following his termination at the Company's expense. (*See* Op. at 10.) Plaintiff claims that Defendants "discontinued his coverage under Defendants' group health plan after only two months." (Pl. Br. at 3.) Defendants do not dispute that they were required to pay for Plaintiff's health plan for six months following his termination, nor do they dispute that Plaintiff only received two months of coverage. Therefore, Defendants are required to pay Plaintiffs $5,849.31 in addition to the $400,000 severance, totaling $405,849.31.

### C. Affirmative Defenses

Defendants assert multiple affirmative defenses, including that that "Plaintiff's unclean hands and bad faith preclude him from recovering *any* severance." (Def. Br. at 15) (emphasis added). The party seeking to invoke the doctrine of unclean hands must show that (1) the party seeking equitable relief committed an unconscionable act, and (2) the act is related to the claim upon which equitable relief is sought. *Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147, 150 (3d Cir. 2019). Defendants point to Plaintiff's actions "during A360's acquisition

---

[15] The Court need not address Defendants' counterclaim for Reformation under ERISA, 29 U.S.C. § 1132(a)(3), because the Court construes the term in the manner Defendants request in their counterlcaim. (*See* Answer at 15-16) ("Prayer of Relief" that Section 7(d) "is reformed to read as the parties intended and agreed, namely, Plaintiff would be paid 12-months' worth of his salary and his target annual bonus, or 6-months' worth of his salary and 6-months' worth of his target annual bonus, depending on whether the termination was effective before or after September 30, 2017").

14

of Bauer, where he went to great lengths to hide his intention to claim severance in the amount of $1,775,000, so that the deal would close, he would receive a significant transaction bonus, and then surprise A360 Media with his severance claim" as evidence of Plaintiff's bad faith.[16] (Def. Br. at 16.) But the Court does not find Plaintiff's actions during the acquisition unconscionable and does not find the unclean hands doctrine applicable here.[17]

The Court is similarly unpersuaded by Defendants' argument that Plaintiff has not satisfied the condition precedent of Section 8 of his Contract, because the general release that Plaintiff returned to Bauer after he left the company was "not substantially in the required form" of the Contract. (Def. Br. at 16.) The release that Plaintiff returned to A360 Media was the exact same release that Bauer originally attached to the Contract as Exhibit A, but for one clause Plaintiff added which states that Plaintiff does not release his claims under Section 7(d) of the Contract.

---

[16] Defendants claim that "Plaintiff concealed what he now claims as his severance by approving a chart showing his total severance obligation as being '$275,000'" and then "forward[ing] to A360 Media a second chart that listed his severance obligation as 'TBD,' thereby avoiding an eye-popping number in the chart that undoubtedly would have caught everyone's attention and jeopardized the deal." (Def. Br. at 16.)

[17] Defendants rely on an out-of-circuit case to argue that "[f]ederal courts have considered and applied the doctrine of 'unclean hands' to bar a plaintiff's recovery in ERISA actions." (Def. Br. at 15) (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985)). The Court notes that the Third Circuit case on which Defendants rely does not apply the unclean hands doctrine in the context of an ERISA claim. *See Scherer Design*, 764 F. App'x at 148-149 (declining to apply unclean hands doctrine where plaintiff alleged various common law contract claims in complaint and TRO). For this additional reason, the Court will not invoke the unclean hands doctrine.

(*See* Def. Ex. 43.) The Court is therefore satisfied that the general release Plaintiff provided was substantially in the required form of the release attached to the original Contract.

Defendants' affirmative defenses are **DENIED**. But the Court still enters summary judgment in Defendants' favor on the ERISA claim.

### D. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (ECF 85) is **GRANTED**, and Plaintiff's cross-motion for summary judgment (ECF 87) is **DENIED**. Defendants are liable to Plaintiff in the amount of $405,849.31 in severance as outlined in the contractual language of Plaintiff's Employment Agreement. (*See* Pl. Ex. 1 §§ 7(d)(ii), (iii).) An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jose R. Almonte, U.S.M.J.
       Parties