**MORGAN, LEWIS & BOCKIUS LLP**
(A Pennsylvania Limited Liability Partnership)
Thomas A. Linthorst
Rudolph J. Burshnic II
502 Carnegie Center
Princeton, New Jersey 08540-7814
Telephone: (609) 919-6642
Facsimile: (609) 919-6701
thomas.linthorst@morganlewis.com
rudolph.burshnic@morganlewis.com

*Attorneys for Defendants A360 Media, LLC*
*and Bauer Media Group USA, LLC*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN KOTOK, <br><br> Plaintiff, <br><br> v. <br><br> A360 MEDIA, LLC and BAUER MEDIA GROUP USA, LLC <br><br> Defendants. | Civil Action No. 2:22-cv-04159-JKS-JRA |

### DEFENDANTS' BRIEF IN SUPPORT OF
### THEIR MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT BACKGROUND ................................................................................................... 2

I.      PROCEDURAL HISTORY.............................................................................................. 2

      A.      The Court Dismisses Plaintiff's Original State-Law Claims As Preempted by ERISA.................................................................................... 2

      B.      The Court Grants Summary Judgment To Defendants On Plaintiff's ERISA Claim. ............................................................................. 3

II.      DEFENDANTS INCURRED SIGNIFICANT FEES AND COSTS TO OBTAIN SUMMARY JUDGMENT. .................................................................... 5

ARGUMENT................................................................................................................................ 5

I.      THE COURT SHOULD AWARD DEFENDANTS ATTORNEYS' FEES UNDER 28 U.S.C. § 1132(G)(1). ........................................................................... 5

      A.      Defendants Achieved Success On The Merits By Winning A Motion to Dismiss and Summary Judgment............................................... 6

      B.      The Ursic Factors Support An Award Of Attorneys' Fees......................... 7

           1.      Factors One and Five: Plaintiff Has Displayed Culpable Conduct In Pursuit of His Meritless Severance Benefits Claim............................................................................................... 7

           2.      Factor Two: Plaintiff Can Satisfy The Requested Award. ............ 9

           3.      Factor 3: Awarding Defendants Fees Would Deter Similarly Baseless Claims............................................................ 10

           4.      Factor 4: The Fourth Factor Is Typically Not Considered When A Defendant Seeks Fees And Is, Therefore, Neutral. ....... 11

           5.      The Ursic Factors Weigh Heavily In Favor Of Awarding Fees and Costs to Defendants. ..................................................... 11

II.      THE REQUESTED ATTORNEYS' FEES ARE REASONABLE..................... 11

      A.      The Lodestar Method.............................................................................. 12

      B.      The Legal Fees Defendants Seek Reasonably Reflect Its Success on the Merits. ......................................................................................... 13

      C.      The Hourly Rates Are Fair And Reasonable. .......................................... 14

      D.      The Hours Expended Are Reasonable. .................................................... 15

CONCLUSION.......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*,
No. CV 17-4600 (FLW), 2019 WL 4635482 (D.N.J. Sept. 24, 2019) ....................................11

*Blum v. Stetson*,
465 U.S. 886 (1984).................................................................................................................12

*DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist.*
*Council of Chicago & Vicinity*,
No. 09 CV 0039, 2011 WL 1131110 (N.D. Ill. Mar. 28, 2011) ...............................................7

*Dee v. Borough of Dunmore*,
548 Fed. App'x 58 (3d Cir. 2013).....................................................................................12, 14

*Fields v. Thompson Printing Co.*,
363 F.3d 259 (3d Cir. 2004)......................................................................................................6

*Glunt v. Life Ins. Co. of N. Am.*,
No. 11-3105, 2012 WL 895512 (E.D. Pa. Mar. 16, 2012) .......................................................6

*Hardt v. Reliance Std. Life Ins.*,
560 U.S. 242 (2010)..................................................................................................1, 5, 7, 11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..........................................................................................................13, 15

*Holden v. Guardian Analytics, Inc.*,
No. 2:23-cv-2115, 2024 WL 2845392 (D.N.J. June 5, 2024)..................................................14

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999).................................................................................................................15

*In re Humanigen, Inc. Sec. Litig.*,
No. 2:22-cv-05258 (WJM), 2024 WL 4182634 (D.N.J. Sept. 11, 2024) ................................14

*Kotok v. A360 Media, LLC*,
No. CV 22-4159, 2025 WL 2808545 (D.N.J. Oct. 2, 2025).........................................4, 7, 8, 9

*Kotok v. A360 Media, LLC*,
No. CV 22-4159 (SDW) (JRA), 2023 WL 1860595 (D.N.J. Feb. 9, 2023) .............................3

*Lohman v. Duryea Borough*,
574 F.3d 163 (3d Cir. 2009).....................................................................................................12

*Loughner v. Univ. of Pittsburgh,*
  260 F.3d 173 (3d Cir. 2001)....................................................................................13

*Maldonado v. Houstoun,*
  256 F.3d 181 (3d Cir. 2001)....................................................................................13

*McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.,*
  33 F.3d 253 (3d Cir. 1994)........................................................................................8

*Monkelis v. Mobay Chemical,*
  827 F.2d 935 (3d Cir. 1987)...........................................................................5, 8, 10

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
  483 U.S. 711 (1987).................................................................................................15

*Pub. Interest Research Grp. of N.J., Inc. v. Windall,*
  51 F.3d 1179 (3d Cir. 1995).....................................................................................13

*Renna v. County of Union,*
  No. 11-3328, 2015 WL 93800 (D.N.J. Jan 7. 2015)................................................14

*Rode v. Dellarciprete,*
  892 F.2d 1177 (3d Cir. 1990)...................................................................................15

*Shah v. Broadspire Servs., Inc.,*
  No. 06-3106, 2007 WL 3124707 (D.N.J. Oct. 23, 2007) ..........................................8

*Templin v. Indep. Blue Cross,*
  785 F.3d 861 (3d Cir. 2015).................................................................................5, 8

*Tobin v. Gen. Elec. Co.,*
  No. CIV. A. 95-4003, 1996 WL 730551 (E.D. Pa. Dec. 11, 1996)....................8, 11

*Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey,*
  No. 16-CV-8021(SDW)(LDW), 2018 WL 2134060 (D.N.J. May 9, 2018).........7, 8

*Ursic v. Bethlehem Mines,*
  719 F.2d 670 (3d Cir. 1983)............................................................................. *passim*

*Viera v. Life Ins. Co. of N. Am.,*
  No. 09-3574, 2013 WL 3199091 (E.D. Pa. June 25, 2013).......................................6

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ...............................................................................................3

29 U.S.C. § 1132(a)(3)......................................................................................................4

29 U.S.C. § 1132(g)(1) ............................................................................................1, 5, 15

**Other Authorities**

Federal Rule of Civil Procedure 54 ....................................................................................................1

Federal Rule of Evidence 408..........................................................................................................12

Local Civil Rules 54.1 ......................................................................................................................1

Local Civil Rules 54.2 ......................................................................................................................1

Rule 12(b)(6)......................................................................................................................................3

Defendants A360 Media, LLC ("A360") and Bauer Media Group USA, LLC ("Bauer") respectfully submit this Brief in support of their Motion for Attorneys' Fees and Costs.

## PRELIMINARY STATEMENT

This case was a cynical and misguided effort by Plaintiff to turn a severance entitlement of $400,000 into an undeserved windfall of millions of dollars. In granting Defendants' Motion for Summary Judgment, the Court rejected Plaintiff's effort, and agreed with what Defendants argued was the contractual severance amount ($400,000), which is what A360 had offered him from the outset, prior to his filing of this lawsuit. This Court described Plaintiff's interpretation of the severance provision in the Employment Agreement as "absurd" and held that the evidence "overwhelmingly" supported Defendants' interpretation.

Defendants now move to recover their legal fees and costs incurred litigating this action in accordance with the Employee Retirement Income Security Act (ERISA), Federal Rule of Civil Procedure 54, and Local Civil Rules 54.1 and 54.2. The Supreme Court confirms what ERISA already expressly provides—attorneys' fees are available under ERISA to plaintiffs and defendants alike and should be awarded where appropriate. *See Hardt v. Reliance Std. Life Ins.*, 560 U.S. 242, 252 (2010) (explaining 1132(g)(1) permits award of "reasonable attorney's fee and costs of action" to "*either* party") (emphasis in original) (quoting 29 U.S.C. § 1132(g)(1)).

The five factors used to assess an award of fees, set forth in *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983), support an award to Defendants:

    (1) the offending parties' culpability or bad faith;
    (2) the ability of the offending parties to satisfy an award of attorneys' fees against the offending parties;
    (3) the deterrent effect of an award of attorneys' fees against the offending parties;
    (4) the benefit conferred on members of the pension plan as a whole;
    (5) the relative merits of the parties' position.

The first and fifth factors heavily favor an award to Defendants. Plaintiff's conduct in seeking an undeserved windfall gives rise to the requisite level of culpability or bad faith. As this Court held, the evidence "overwhelmingly" supported Defendants' interpretation, and no evidence supported Plaintiff's "absurd" interpretation of the Employment Agreement's severance provision.

Factor two also favors Defendants because Plaintiff—who has been a highly-paid corporate executive for many years—is clearly able satisfy a judgment for the amount of fees and costs that Defendants request. As to factor three, such an award will deter former employees like Plaintiff from asserting baseless claims seeking a windfall to which they know they are not entitled and in the face of overwhelming contrary evidence. Factor four is neutral where a defendant seeks its fees.

As such, the *Ursic* factors heavily favor an award of fees and costs to Defendants. Defendants respectfully request fees in the amount of $521,709, and costs of $13,997.74.[1] The fee award Defendants seek is appropriate and reflects a discounted amount of what Defendants actually spent in defending against Plaintiff's lawsuit and prevailing through summary judgment.

## RELEVANT BACKGROUND

I. **PROCEDURAL HISTORY**

A. **The Court Dismisses Plaintiff's Original State-Law Claims As Preempted by ERISA.**

On May 18, 2022, Plaintiff filed a Complaint against Defendants in the Superior Court of New Jersey, Bergen County ("State Court Action"), alleging breach of contract and violation of the "New Jersey Wage Act." ECF No. 1-1. On June 7, 2022, Plaintiff filed a First Amended

---

[1]    This cost amount is also sought through a Motion for Bill of Costs filed on this date. ECF No. 108. Defendants only seek reimbursement of this amount once. In addition, Defendants only seek their fees and costs billed through September 30, 2025. Defendants reserve the right to supplement this Motion as their fees and costs continue to be incurred.

Complaint in the State Court Action. ECF No. 5-1. Plaintiff sought to bring his severance claim under the "New Jersey Wage Act" to claim 200% liquidated damages—he sought $1,775,000 in severance, plus $3,550,000 in liquidated damages, for a total of $5,325,000. ECF No. 1-1, at 10, ¶ 38.

On June 20, 2022, Defendants removed this action to this Court on federal question grounds because Plaintiff's state-law causes of action were preempted by ERISA. ECF No. 1. On July 11, 2022, Defendants moved to dismiss the First Amended Complaint because Plaintiff's state-law claims were preempted by ERISA or, in the alternative, because Plaintiff failed to state a claim under the New Jersey Wage Collection Law. ECF No. 7.

On February 9, 2023, the Court granted Defendants' motion to dismiss, holding that ERISA preempted the claims in Plaintiff's First Amended Complaint. *See Kotok v. A360 Media, LLC*, No. CV 22-4159 (SDW) (JRA), 2023 WL 1860595, at *5 (D.N.J. Feb. 9, 2023) ("Defendants have shown that it is 'apparent on the face of the complaint,' and the Agreement relied on in the complaint, that both of Plaintiff's claims relate to an ERISA employee benefit plan and are thus preempted, so dismissal under Rule 12(b)(6) is warranted."). The Court granted Plaintiff leave to amend to allege his claims under ERISA. *Id.* The effect of this ruling was to eliminate Plaintiff's claim for 200% liquidated damages (not available under ERISA), removing $3,550,000 from Plaintiff's damages claim.

### B.    The Court Grants Summary Judgment To Defendants On Plaintiff's ERISA Claim.

On February 22, 2023, Plaintiff filed a Second Amended Complaint ("SAC") with a count under ERISA, 29 U.S.C. 1132(a)(1)(B), alleging that Defendants breached the Employment Agreement. ECF No. 16. In the SAC, Plaintiff concedes that on April 1, 2022, before he filed this

action, "A360 offered Kotok . . . $400,000" in severance, but Plaintiff insisted that the Employment Agreement instead "required A360 to pay Kotok $1,775,000." *Id.* at ¶ 25.

On March 31, 2023, Defendants filed an Answer and Defenses to the SAC and Counterclaim. Defendants' Counterclaim asserted a claim under ERISA, 29 U.S.C. § 1132(a)(3), for Reformation of the Employment Agreement (arguing that, to the extent the Employment Agreement could be read to provide Plaintiff with severance of $1,775,000, it should be reformed consistent with the parties' intent to provide severance of $400,000). ECF No. 22, Counterclaim ¶¶ 6–7. On October 16, 2023, Defendants filed an Amended Answer and Defenses to the SAC and Counterclaim to add an additional defense of unilateral mistake (again, arguing that, to the extent the Employment Agreement could be read to provide Plaintiff with severance of $1,775,000, it should be reformed consistent with the parties' intent to provide severance of $400,000). ECF No. 40, Counterclaim ¶ 10.

Following the completion of discovery, on December 20, 2024, Plaintiff and Defendants filed cross-motions for summary judgment. ECF Nos. 84, 85. On January 6, 2025, the parties filed oppositions to summary judgment and filed their replies on January 13, 2025. ECF Nos. 88–93.

On September 23, 2025, the Court granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment. *Kotok v. A360 Media, LLC*, No. CV 22-4159, 2025 WL 2808545, at *1 (D.N.J. Oct. 2, 2025) ("Defendants' motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED.").

On October 7, 2025, Plaintiff filed a motion for reconsideration of the court's summary judgment Opinion and Order. ECF No. 106. Defendants filed an opposition the motion for reconsideration on October 20, 2025. ECF No. 107. Defendants filed a Motion for Bill of Costs on October 23, 2025 seeking costs in the amount of $13,997.74. ECF No. 108.

4

## II.    DEFENDANTS INCURRED SIGNIFICANT FEES AND COSTS TO OBTAIN SUMMARY JUDGMENT.

Defendants have incurred significant attorneys' fees in this action, including for work associated with analyzing the pleadings, conducting legal research, devising defense strategy, briefing a successful motion to dismiss to dismiss the state law claims and eliminate $3,550,000 in claimed damages, and filing pleadings arguing that the Employment Agreement provides, or should be reformed to provide, not severance of $1,755,000 as Plaintiff contended but at most $400,000. *See* Declaration of Thomas A. Linthorst ("Linthorst Decl.") ¶ 17. Defendants also served and responded to written discovery, produced documents, conducted and defended depositions, engaged in discovery-related motion practice, and filed and responded to motions for summary judgment. *Id*.

Defendants seek reimbursement of $521,709 in attorneys' fees and $13,997.74 in costs. *Id*. ¶¶ 18–19.

## ARGUMENT

## I.    THE COURT SHOULD AWARD DEFENDANTS ATTORNEYS' FEES UNDER 28 U.S.C. § 1132(G)(1).

Under ERISA, a district court may award reasonable attorneys' fees and costs to either party. *See* 29 U.S.C. § 1132(g)(1). Although many ERISA fee cases involve prevailing plaintiffs seeking fees, the Third Circuit has made clear that prevailing plaintiffs and defendants are both entitled to fees as prevailing parties. *See, e.g., Monkelis v. Mobay Chemical*, 827 F.2d 935 (3d Cir. 1987) (affirming attorneys' fee award to defendant who obtained summary judgment on ERISA claims).

When determining whether to make an award of attorneys' fees under Section 1132(g)(1), a district court should first determine whether the party has had "some success" under ERISA. *See Templin v. Indep. Blue Cross*, 785 F.3d 861, 863–64 (3d Cir. 2015); *see also Hardt*, 560 U.S. at

5

255. If that requirement is met, district courts within the Third Circuit generally consider the five

factors laid out in *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983) to determine whether a

fee award is appropriate. The factors are:

> (1) the offending parties' culpability or bad faith; (2) the ability of the offending
> parties to satisfy an award of attorneys' fees; (3) the deter[r]ent effect of an award
> of attorneys' fees against the offending parties; (4) the benefit conferred on
> members of the pension plan as a whole; and (5) the relative merits of the parties'
> position.

*Ursic*, 719 F.2d at 673.

"[T]he *Ursic* factors are not requirements in the sense that a party must demonstrate all of

them in order to warrant an award of attorney's fees" but they are elements that courts within the

Third Circuit consider in exercising their discretion. *Fields v. Thompson Printing Co.*, 363 F.3d

259, 275-76 (3d Cir. 2004). The factors serve as a "flexible guideline[]" for the court. *Glunt v. Life

Ins. Co. of N. Am.*, No. 11-3105, 2012 WL 895512, at *2 (E.D. Pa. Mar. 16, 2012); *see also Viera

v. Life Ins. Co. of N. Am.*, No. 09-3574, 2013 WL 3199091, at *2 (E.D. Pa. June 25, 2013) ("The

*Ursic* Factors are not a rigid test; rather, they provide a useful framework for courts to analyze a

motion for attorney's fees.").

Because Defendants achieved significant success on the merits—obtaining dismissal of

Plaintiff's liquidated damages claim of $3,550,000 and then obtaining summary judgment and

defeating Plaintiff's claim for $1,755,000 in severance—and because application of the *Ursic*

factors heavily favor Defendants, an award of attorneys' fees to Defendants is appropriate here.

### A.  Defendants Achieved Success On The Merits By Winning A Motion to Dismiss and Summary Judgment.

The threshold "success on the merits" inquiry assesses whether the party seeking to recover

attorneys' fees "can fairly call the outcome of the litigation [a] success," without "conducting a

'lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue.'" *Hardt*, 560 U.S. at 255.

Here, as explained in more detail below, the Court granted Defendant's motion to dismiss, eliminating Plaintiff's liquidated damages claim of $3,550,000, and Defendant's motion for summary judgment, rejecting Plaintiff's claim to severance of $1,755,000 and siding with Defendants' interpretation of the Employment Agreement as providing severance in the amount of $400,000. Reducing the amount owed to Plaintiff as a result of his termination of employment from $5,325,000 to $405,849.31 (including COBRA reimbursement) is a significant success by any measure. *Kotok,* 2025 WL 2808545, at *6. Therefore, Defendants achieved significant success on the merits. *See, e.g., Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, No. 16-CV-8021(SDW)(LDW), 2018 WL 2134060, at *2 (D.N.J. May 9, 2018) (granting fees to defendant who prevailed at summary judgment on plaintiff's ERISA claims); *DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, No. 09 CV 0039, 2011 WL 1131110, at *1 (N.D. Ill. Mar. 28, 2011) (granting defendant fees to defendant in ERISA action; "There is no doubt that the Defendant achieved 'some degree of success on the merits' as this Court awarded summary judgment in the Defendant's favor on all of the Plaintiff's claims").

### B.    The *Ursic* Factors Support An Award Of Attorneys' Fees.

The *Ursic* factors support a fee award to Defendants.

#### 1.    Factors One and Five: Plaintiff Has Displayed Culpable Conduct In Pursuit of His Meritless Severance Benefits Claim.

Factor one—bad faith or culpability—and factor five—the relative merits of the parties' positions—weigh heavily in favor of Defendants. *See Univ. Spine Ctr.*, 2018 WL 3412845, at *3 ("[C]ourts may consider a party's culpability relative to that of the opposing party and may thus

7

consider the first and fifth *Ursic* factors in conjunction."). "Bad faith" normally connotes an "ulterior motive or sinister purpose." *McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.*, 33 F.3d 253, 254 (3d Cir. 1994). "Culpability," on the other hand, requires less severe conduct. "Culpable conduct is 'reprehensible or wrong' but need not involve 'malice or a guilty purpose.'" *Templin v. Indep. Blue Cross*, 785 F.3d 861, 868 (3d Cir. 2015). "The pursuit of a groundless or meritless position can support a finding of culpability." *Tobin v. Gen. Elec. Co.*, No. CIV. A. 95-4003, 1996 WL 730551, at *2 (E.D. Pa. Dec. 11, 1996); *see also Univ. Spine Ctr.*, 2018 WL 3412845, at *3 (same (citing *Monkelis v. Mobay Chem.*, 827 F.2d 935, 937 (3d Cir. 1987)). Thus, "where there is a 'complete lack of evidence' or where a clearly untenable position has been taken[,] . . . claims [will] be deemed to be so lacking in relative merit that the fifth *Ursic* factor is satisfied." *Shah v. Broadspire Servs., Inc.*, No. 06-3106, 2007 WL 3124707, at *3 (D.N.J. Oct. 23, 2007).

Plaintiff's culpability or bad faith is evident from the facts already found by the Court. The Court held that it was "**clear** that the parties did not intend to agree to twelve months of salary and twelve years of bonus [for a termination without cause for the first year]." *Kotok*, 2025 WL 2808545, at *6 (emphasis added). The Court "agree[d] with Defendants that it 'would be **absurd**' to interpret this provision as Bauer intending to give Plaintiff a severance package that jumped from $275,000 (6 months of salary) to $3,550,000 (12 months of salary and twelve times annual bonus) [for a termination without cause for the first year] without any explicit reference to or discussion of that figure." *Id.* (emphasis added).

The Court found that "[t]he evidence of the parties' mutual understanding while negotiating (1) the Contract itself and (2) the acquisition of Bauer **overwhelmingly favors Defendants' interpretation of the clause**." *Id.* (emphasis added). This evidence included:

8

- That "the severance amounts exchanged between Bauer and A360 Media during the acquisition negotiations only ever referred to Plaintiff's severance liability as six months—not six years—and certainly never referenced a million-dollar severance package." *Id.* at *6.

- That "Plaintiff himself sent A360 Media a chart before the acquisition listing the total severance for *all four executives* as $682,500, which is less than half of the amount that Plaintiff currently seeks in severance now just for himself." *Id.* (emphasis in original).

- That "[i]n that same chart, Plaintiff listed his severance liability as 'TBD'; not a million-dollar amount." *Id.* As the Court rightly noted, "If Plaintiff understood his severance to be the amount he now seeks, why did [he] not list $1,775,000 on the chart that he edited and sent to Defendant A360 Media?" *Id.*

As the Court concluded: "Thus, it was certainly not the 'understanding of the parties' that Plaintiff receive twelve or six years of bonus, $3 million and $1 million respectively, in addition to his monthly salary, as severance when they negotiated the Contract or discussed severance liability during the takeover negotiations." *Id.* at *6.

Obviously, Plaintiff knew what the intent of the parties was all along, yet Plaintiff pursued this litigation for over three years in a cynical effort to claim a windfall he did not deserve.

Therefore, *Ursic* factors one and five weigh heavily in favor of an award of attorneys' fees and costs to Defendants.

### 2.    Factor Two: Plaintiff Can Satisfy The Requested Award.

The second *Ursic* factor calls for an analysis of the non-movant's ability to satisfy an attorneys' fee award. 719 F.2d at 673.

As explained below, Defendants seeks an award for attorneys' fees and costs in the amount of $521,709  and costs of $13,997.74. Plaintiff can certainly satisfy this award. Indeed, the Court just has awarded Plaintiff a cash payment of $405,849.31 in severance benefits, which A360 is presently in the process of paying. Plaintiff has been, and continues to be, a highly paid business executive with ample resources to satisfy the award. In his final year at his prior employer before Bauer, Plaintiff "earned ████████." *See* ECF No. 87-3, ¶ 17 (Declaration of Steven Kotok). As Bauer's Chief Executive Officer and President from October 2016 through March 31, 2022, Plaintiff received a base salary of $550,000 per year with a target annual bonus of $250,000. *See id* ¶ 17. Beginning in September 2022, at his next employer, Plaintiff entered into an employment agreement providing for a ████████████████████████████████████████ ████████████████████████████████████████████. ECF No. 86-12.

Because Plaintiff is able to pay the fees and costs requested, Factor 2 also weighs in favor of Defendants.

### 3. Factor 3: Awarding Defendants Fees Would Deter Similarly Baseless Claims.

The third *Ursic* factor looks to "the deter[r]ent effect of an award of attorneys' fees." *Ursic*, 719 F.2d at 673. The Third Circuit has held that awarding fees to a prevailing defendant can have "beneficial" deterrent effect "upon those who contemplate speculative and duplicative litigation on thinly based grounds." *Monkelis*, 827 F.2d at 937.

Here, as demonstrated above, Plaintiff pursued meritless claims for severance amounts based on an interpretation of the Employment Agreement squarely at odds with the parties' (including Plaintiff's) intent. Through this misguided pursuit, Plaintiff caused the needless expenditure of hundreds of the thousands of dollars in legal fees and costs. Awarding fees and costs to Defendants will serve to deter others from pursuing litigation to seek undeserved windfalls.

*See Tobin*, 1996 WL 730551, at *4 (holding that award of fees and costs to defendant "would not deter meritorious suits; rather, it would caution plaintiffs against pursuing claims . . . without evidentiary support").

### 4.    Factor 4: The Fourth Factor Is Typically Not Considered When A Defendant Seeks Fees And Is, Therefore, Neutral.

The fourth *Ursic* factor inquires as to whether the party requesting fees conferred a benefit on members of the ERISA plan as a whole. 719 F.2d at 673. Typically, courts disregard this factor in instances where the defendant—rather than the plaintiff—seeks to recover attorneys' fees. *See, e.g., Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 17-4600 (FLW), 2019 WL 4635482, at *4 (D.N.J. Sept. 24, 2019) ("[B]ecause Plaintiff has failed to achieve a successful result in litigating this action, this factor is inapplicable to the Court's analysis on this motion."). Accordingly, this *Ursic* factor is neutral.

### 5.    The Ursic Factors Weigh Heavily In Favor Of Awarding Fees and Costs to Defendants.

For the reasons set forth above, *Ursic* factors one, two, three and five weigh in favor of awarding fees and costs to Defendants, while factor four is neutral. Thus, the *Ursic* factors weigh heavily in favor of awarding fees and costs to Defendants.

## II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

Once a court determines that an award of attorneys' fees is appropriate, a court should "review the attorney's fees and costs requested" and ensure the amount is reasonable. *Hardt*, 560 U.S. at 249. Because Defendants achieved success on the merits in obtaining summary judgment and because the *Ursic* factors weigh strongly in their favor, Defendants respectfully seeks an award of attorneys' fees of $521,709, and costs of $13,997.74.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

11



Federal Rule of Evidence 408 does not bar the Court's "consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case." *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009). While Rule 408 bars the use of settlement negotiations to "to prove the merit or lack of merit of a claim," evidence of settlement negotiations "can be relevant when comparing what a plaintiff 'requested' to what the plaintiff was ultimately 'awarded'" to assess the reasonableness of a fee award. *Id.*

### A.    The Lodestar Method.

Should the Court find that an award of attorneys' fees and costs is warranted, as it should for Defendant, the estimate of reasonable attorneys' fees should be determined by applying the "lodestar" method of calculation. *Blum v. Stetson*, 465 U.S. 886, 888 (1984). If the party is entitled to attorneys' fees, "[t]here is a strong presumption that the lodestar is a reasonable fee." *Dee v. Borough of Dunmore*, 548 Fed. App'x 58, 60 (3d Cir. 2013) (citations omitted).

The lodestar number is calculated by multiplying the number of hours reasonably expended on litigation times the reasonable hourly rate. *Id.* In determining the reasonable rate, courts look to the prevailing market rates in the relevant community and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). The party seeking attorneys' fees bears the burden of demonstrating that the requested hourly rates are reasonable. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The court will then review the time charged and eliminate "excessive, redundant, or otherwise unnecessary" fees. *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995). Ultimately, courts "should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440.

**B.     The Legal Fees Defendants Seek Reasonably Reflect Its Success on the Merits.**

Defendants have submitted a declaration from counsel identifying the Morgan, Lewis & Bockius LLP ("Morgan Lewis") attorneys who represented it in this matter and who billed $10,000 or more in fees to this case.[2] *See* Linthorst Decl. ¶¶ 11–14. For each attorney timekeeper, Defendants identify their position (e.g., partner, associate), 2025 standard billing rate, effective billing rate applicable to this case, the number of hours spent related to this case, and the total attorneys' fees for each timekeeper (lodestar). *Id.*, Ex. 1. Included as Exhibit 2 to the declaration are the detailed timesheets reflecting each individual time entry by date, timekeeper, task description (revised as needed to protect privilege), and hours worked. *See id.* Ex. 2. These materials reflect total attorneys' fees of $521,709, which represents a discounted lodestar amount of work related to this action (only the work of five attorney timekeepers of 27 total timekeepers).

In light of Defendants' success on the merits—including obtaining dismissal of Plaintiff's state-law claims as preempted by ERISA and their summary judgment win on Plaintiff's ERISA claim—the requested amount is eminently reasonable.

---

[2]     Defendants do not seek reimbursement for fees billed by the other 22 timekeepers, who billed a total of $59,748 through September 30, 2025. Linthorst Decl. ¶ 14.

### C.    The Hourly Rates Are Fair And Reasonable.

An "attorney's reasonable hourly rate is the prevailing rate in a legal market for an attorney of similar experience and skill." *Dee*, 548 Fed. App'x at 62; *see also Renna v. County of Union*, No. 11-3328, 2015 WL 93800, at *9 (D.N.J. Jan 7. 2015) (same). Here, the hourly rates used in the lodestar calculation are fair and reasonable in accordance with the prevailing market rates in the community. The hourly rates used in the lodestar, which range from $550 per hour for associate time at the low end to $1,135 per hour for partner time at the highest end, are justified by counsel's significant experience in complex employment counseling and litigation, including in ERISA matters. *See* Linthorst Decl. ¶¶ 2–16, Ex. 1.

The lodestar billing rates reflected above are in line with prevailing market rates for counsel in ERISA litigation of similar complexity in this jurisdiction. *See id.* at ¶ 16. Courts in this district have approved attorneys' fee awards at similar rates for attorneys with comparable levels of experience in complex litigation. *See, e.g.*, *In re Humanigen, Inc. Sec. Litig*., No. 2:22-cv-05258 (WJM), 2024 WL 4182634, at *13 (D.N.J. Sept. 11, 2024) (finding "reasonable billing rates" ranging from $500 to $600 per hour for associates and $900 to $1,325 per hour for partners for work performed between 2022 and 2024 when using the Lodestar method to cross-check the percentage fee award); *Holden v. Guardian Analytics, Inc*., No. 2:23-cv-2115, 2024 WL 2845392, at *12 (D.N.J. June 5, 2024) (finding reasonable hourly billing rates included up to $1,125 for partners for work performed in 2023 and 2024).

In short, Defendants' proposed lodestar rates are reasonable because they accurately reflect the skill and experience of the attorneys who successfully represented Defendants, and they are on par with the rates charged by attorneys in this jurisdiction in similarly complex cases.

14

**D.      The Hours Expended Are Reasonable.**

A fee petition must be "specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990). The complexity of the area of law at issue is relevant to assessing the reasonableness of the hours expended, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 726-27 (1987), and courts widely recognize that "ERISA is a comprehensive reticulated statute, and is enormously complex and detailed," *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) (citations and internal quotations omitted).

Defendants' lodestar is based on a little over 610 hours of work performed by attorneys, such as with analyzing the pleadings, conducting legal research, devising defense strategy, briefing a motion to dismiss, written discovery and document productions, depositions, discovery-related motion practice, and summary judgment motion practice. *See* Linthorst Decl. ¶ 17 and Exs. 1 and 2.

As demonstrated by the timesheets provided, all the time sought was spent on critical tasks necessary to litigate this matter. *Id.* ¶ 15, Ex. 2. This was not a case of unnecessary duplication or inefficiency; all the hours at issue were spent advancing the case and were necessary to the ultimate judgment in Defendants' favor. *Id.*

Given the complexity of ERISA, the skill, experience, and efficiency of the counsel involved, and the Court granting summary judgment to Defendants, the hours expended are eminently reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (where a client achieves "excellent results, his attorney should recover a fully compensatory fee").

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court award $521,709 in attorneys' fees and $13,997.74 in costs under 29 U.S.C. § 1132(g)(1).

15

Dated: October 23, 2025

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

s/ Thomas A. Linthorst
Thomas A. Linthorst
Rudolph J. Burshnic II

*Attorneys for Defendants A360 Media, LLC
and Bauer Media Group USA, LLC*